## In re OLD ISLAND GOLF CLUB, LLC, Debtor.

### No. 00–31534.

United States Bankruptcy Court, E.D. Ternessee.

March 6, 2001.

Bailey, Roberts & Bailey, P.L.L.C., Robert M. Bailey, Knoxville, TN, for Debtor.

Miller & Martin, LLP, Jeffrey S. Norwood, Chattanooga, TN, for Textron Financial Corporation.

## *MEMORANDUM ON DEBTOR'S MOTION TO PAY ADMINISTRATIVE EXPENSE*

RICHARD STAIR, Jr., Bankruptcy Judge.

Presently before the court is the Motion to Pay Administrative Expenses from Cash Collateral (Motion) filed by the Debtor on January 17, 2001. By its Motion, the Debtor seeks permission to utilize cash collateral of $4,639.00 for attorneys' fees

---

incurred while operating its business as a debtor-in-possession in this Chapter 11 case. The funds are cash collateral of Textron Financial Corporation (Textron).

On January 26, 2001, Textron filed Textron's Memorandum in Opposition to Debtor's Motion to Pay Administrative Expenses from Cash Collateral. The Debtor filed its Brief in Support of Motion to Pay Administrative Expenses from Cash Collateral on February 23, 2001. The court heard oral argument on March 1, 2001.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(M) (West 1993).

## I

This case was commenced by the filing of the Debtor's Voluntary Petition under Chapter 11 on April 13, 2000. Contemporaneously with the filing of its petition, the Debtor filed an Application of Debtor to Employ Attorneys requesting that it be allowed to employ Robert M. Bailey and the law firm of Bailey, Roberts & Bailey, P.L.L.C., pursuant to 11 U.S.C.A. § 327(a) (West 1993) to represent it generally in its Chapter 11 case. Employment of the Debtor's attorneys was approved pursuant to an Order Authorizing Employment of Attorneys entered on April 18, 2000.

Textron is a creditor of the Debtor by virtue of a Loan Agreement dated July 29, 1999, through which it loaned the Debtor $4,100,000.00. Pursuant to the terms of the Loan Agreement, the Debtor executed a $4,100,000.00 Promissory Note, also dated July 29, 1999, in favor of Textron. The Promissory Note grants Textron a security interest in substantially all of the real and personal property of the Debtor.

An Agreed Interim Order Authorizing Limited Use of Cash Collateral and Granting Adequate Protection (Cash Collateral Order) was entered on May 17, 2000. The Cash Collateral Order authorized the Debtor's limited use of cash collateral of the Internal Revenue Service and Textron through July 20, 2000. The Cash Collateral Order authorized, *inter alia*, payments of up to $4,250.00 per month for legal and accounting fees. It is undisputed that the legal fees to which the Cash Collateral Order applied were those fees attributable to services rendered by the attorneys employed by the Debtor in this bankruptcy case.

A subsequent Agreed Order (Second Cash Collateral Order) entered on August 31, 2000, extended the Debtor's right to use cash collateral through September 29, 2000. This Second Cash Collateral Order provided that the right would terminate unless the Debtor filed a motion to sell its golf course real property prior to that date. As no motion was filed, the Debtor's authority to use cash collateral terminated on September 29, 2000.[2] On that date, $4,639.00 of cash collateral remained in the Debtor's possession. These funds were sent to the Debtor's attorneys and placed in the attorneys' trust account.[3]

On December 26, 2000, the court approved the Third Interim Application of Attorneys for the Debtor for Compensation and Reimbursement of Expenses authorizing compensation in the amount of $11,277.75 and reimbursement of expenses of $395.76 to the Debtor's counsel. Of these amounts, $5,601.75 in compensation was incurred prior to September 29, 2000. By the Motion presently before the court, the Debtor seeks permission to apply the

---

1. In a scheduling Order entered on January 26, 2001, the parties were requested to file written stipulations of undisputed facts and documents by February 16, 2001. No stipulations were filed and the court, therefore, relies exclusively on documents of record in the Debtor's case file. Judicial notice is taken of those documents. *See* FED. R. EVID. 201.

2. Another Agreed Order entered October 25, 2000, granted Textron exclusive possession of, and the right to operate, the Debtor's golf course.

3. The case file does not indicate on what date the funds were transferred to the Debtor's attorneys, but the Debtor does not dispute that the transfer occurred after September 29, 2000.

$4,639.00 of cash collateral currently in its attorneys' trust account toward its pre-September 29, 2000 legal fees. Textron objects to the proposed use of these funds on the grounds that the Debtor's right to use cash collateral had expired. Textron accordingly seeks the return of its cash collateral.

## II

The use of cash collateral [4] is governed by 11 U.S.C.A. § 363(c) (West 1993 & Supp. 2000). Section 363(c)(2) provides that the trustee may use, sell, or lease cash collateral only if:

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C.A. § 363(c)(2) (West 1993).

The Debtor asserts that the requested payment to its attorneys should be allowed because the fees were incurred while the Debtor had authorization to use cash collateral and because Textron consented in the Cash Collateral Order to payments of $4,250.00 per month for legal and accounting fees. The Debtor cites no authority to support its position under § 363(c). The closest case that the court's research reveals is *In re JKJ Chevrolet, Inc.*, 190 B.R. 542 (Bankr.E.D.Va.1995).

In *JKJ*, the court had entered previous consent orders authorizing the debtor's use of cash collateral for, *inter alia*, employee wages. *See id.* at 543. The debtor later moved for authorization to use cash collateral to pay employee wages incurred before, but not due until after, the expiration of the original consent orders. *See id.*

at 544. The court granted the debtor's motion, noting that "the happenstance of the expiration of the cash collateral order before the wages were actually paid should not preclude payment of wages due employees." *Id.* at 545.

In *JKJ*, "the express terms of the final [expired] consent order addressed the debtor's right to seek court authority to use cash collateral beyond the termination date." *Id.* at 544. The Cash Collateral Order in the present case states that it does not "limit the Debtor from seeking Court approval of the right to use the Collateral on such other terms as may be approved by the Court." Cash Collateral Order at ¶ 24.

*JKJ* is distinguishable in that the debtor there moved for renewed authorization from the court rather than relying on the terms of the expired consent orders. *See id.* at 543–44. As noted, § 363(c)(2) allows the trustee's use of cash collateral only with the consent of all entities with an interest in the collateral or with court approval. *See* 11 U.S.C.A. § 363(c)(2). In the present case, Textron's consent expired with the September 29, 2000 termination of the Second Cash Collateral Order, so the current requested payment can only be proper with court approval. *See id.* In contrast with *JKJ*, the Debtor's present Motion is based on the expired cash collateral orders. *See* Motion at ¶ 6. The Debtor's authorization under those orders expired on September 29, 2000.

Nonetheless, the court is persuaded that it is the intention of the Debtor and Textron, as evidenced by the May 17, 2000 Cash Collateral Order, that controls the resolution of this contested matter. Clear-

---

**4.** For purposes of § 363, cash collateral is defined as:

[C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C.A. § 363(a) (West Supp.2000).

ly, Textron consented to the payment of the Debtor's legal and accounting fees accruing during the time the Debtor was authorized to use cash collateral. Textron agreed that those fees could not exceed $4,250.00 monthly and that the fees would be paid from its cash collateral. The fact that the fees were not paid prior to September 29, 2000, the date the Debtor's entitlement to use cash collateral terminated, is not, in the court's mind, dispositive of the issue. What is conclusive is that the fees were earned prior to September 29, 2000, and the cash collateral from which the Debtor now seeks to pay the fees was generated prior to September 29, 2000, in compliance with the Cash Collateral Order. Textron is receiving the benefit of its bargain.

In summary, Textron agreed that the Debtor would be allowed $4,250.00 monthly for legal and accounting fees from cash collateral. The disputed attorneys' fees were incurred while the Debtor was authorized to use cash collateral and the cash collateral from which those fees are to be paid was generated while the Debtor was authorized to use cash collateral. The fact that payment of the attorneys' fees is to be made after the Debtor was no longer authorized to use cash collateral is of no consequence. Textron will be required to pay no more than it agreed to pay in the May 17, 2000 Cash Collateral Order.

For the reasons stated herein, the Debtor's Motion will be granted and the Debtor will be authorized to pay its attorneys the $4,639.00 in cash collateral on hand.

An appropriate order will be entered.